RECORD NO. 15-4159

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## HECTOR MANUEL CASTANEDA GASTELO,
## a/k/a Frankie, a/k/a Felix,

*Defendant – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### AT CHARLOTTE

_____

### BRIEF OF APPELLANT

_____

**William D. Auman**
**AUMAN LAW OFFICES**
**70 Woodfin Place, Suite 403**
**Asheville, North Carolina  28801**
**(828) 236-1808**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................ii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION.....................................1

STATEMENT OF ISSUES...........................................1

STATEMENT OF THE CASE.........................................1

    Statement of Facts......................................4

SUMMARY OF THE ARGUMENT.......................................8

ARGUMENT......................................................9

    ARGUMENT I: Whether the defendant's plea was unknowing
    and involuntary due to ineffective assistance of trial
    counsel?...............................................9

        A.   Standard of Review..............................9

        B.   Substance of the Argument......................10

    ARGUMENT II: Whether prosecutorial misconduct served
    to influence the defendant's decision to forgo moving
    to withdraw his guilty plea?...........................15

        A.   Standard of Review.............................15

        B.   Substance of the Argument......................15

CONCLUSION...................................................17

REQUEST FOR ORAL ARGUMENT....................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

TABLE OF AUTHORITIES

Page(s)

CASES

*Boykin v. Alabama*,
    395 U.S. 238, 23 L. Ed. 2d 274 (1969).....................14

*Bradshaw v. Stumpf*,
    545 U.S. 172, 162 L. Ed. 2d 143 (2005)...............13, 14

*Brady v. United States*,
    397 U.S. 742, 25 L. Ed. 2d 747 (1970).................13, 17

*Duncan v. Louisiana*,
    391 U.S. 145, 20 L. Ed. 2d 491 (1968).....................16

*Florida v. Nixon*,
    543 U.S. 175, 160 L. Ed. 2d 565 (2004)....................10

*Halbert v. Michigan*,
    545 U.S. 605, 162 L. Ed. 2d 552 (2005)....................11

*Hooper v. Garraghty*,
    845 F.2d 471 (4th Cir. 1988) ...........................12

*Kimmelman v. Morrison*,
    477 U.S. 365, 91 L. Ed. 2d 305 (1986)....................11

*Lafler v. Cooper*,
    566 U.S. 1, 182 L. Ed. 2d 398 (2012).....................11

*Strickland v. Washington*,
    466 U.S. 668, 80 L.Ed.2d 674 (1984)...............9, 10, 12

*United States v. Alerre*,
    430 F.3d 681 (4th Cir. 2005) ...........................15

*United States v. Brockington*,
    849 F.2d 872 (4th Cir. 1988) ...........................15

*United States v. Dinnall*,
    269 F.3d 418 (4th Cir. 2001) ............................9

*United States v. Goins*,
    51 F.3d 400 (4th Cir. 1995) .............................9

ii

*United States v. Hastings,*
    134 F.3d 235 (4th Cir. 1998) ...............................9

*United States v. Moussaoui,*
    591 F.3d 263 (4th Cir. 2010) ..............................12

*United States v. Puckett,*
    61 F.3d 1092 (4th Cir. 1995) ..............................16

*United States v. Richardson,*
    195 F.3d 192 (4th Cir. 1999) ...........................9–10

CONSTITUTIONAL PROVISION

U.S. Const. amend VI.........................................11

STATUTES

18 U.S.C. § 2.................................................1

18 U.S.C. § 1956(h)..........................................1

18 U.S.C. § 3231.............................................1

18 U.S.C. § 3742.............................................1

21 U.S.C. § 841(a)(1)........................................1

21 U.S.C. § 841(b)(1)(A).....................................1

21 U.S.C. § 846..............................................1

28 U.S.C. § 1291.............................................1

RULE

Fed. R. Crim. P. 16.........................................12

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had jurisdiction in the matters at bar under 18 U.S.C. section 3231, and imposed sentence on March 2, 2015. The appellant entered notice of appeal on March 13, 2015. Jurisdiction in this Court is pursuant to 28 U.S.C. section 1291 and 18 U.S.C. section 3742.

STATEMENT OF ISSUES

1.  Whether the defendant was sentenced based on a plea of guilty that was arguably unknowing and involuntary due to ineffective assistance of trial counsel?

2.  Whether prosecutorial misconduct contributed to the defendant's failure to move to withdraw his plea?

STATEMENT OF THE CASE

On September 18, 2013, the defendant and six others were named in a four-count bill of indictment filed in the western district of North Carolina. Mr. Gastelo was named on counts 1, 2 and 4 of the indictment. It was alleged that he conspired in the distribution of heroin and possessed heroin with the intent to distribute, with an amount of at least 1 kg, in violation of 21 U.S.C. sections 841(a)(1), 841(b)(1)(A), and 846; that he conspired to launder money in violation of 18 U.S.C. section 1956(h); and that he distributed and possessed at least 1 kg of heroin or aided and abetted the same, in violation of 18 U.S.C. sections 841(a)(1), 841(b)(1)(A), and 2.

1

Mr. Gastelo, represented by attorney John J. Cacheris of the Mecklenburg County Bar, appeared before U.S. Magistrate Judge David S. Cayer and pled guilty to Count 1 of the indictment pursuant to a written plea agreement on May 21, 2014. Among the terms of the defendant's plea was an agreement that the amount of heroin that was known to or reasonably foreseeable by the defendant was at least 1 kg, but that the parties would address that particular issue at sentencing. JA 23. After colloquy, Judge Cayer accepted the defendant's plea, although objections to the government's factual basis were pending at the time. Mr. Gastelo was further advised that he had waived appellate rights except with regard to claims of ineffective assistance of counsel or prosecutorial misconduct. JA 24-27.

On November 24, 2014, an initial pre-sentence report (PSR) was filed that noted, among other items, that the defendant would have a total offense level of 35. JA 249. The defendant filed objection to the initial PSR on December 12, 2014, and subsequently the government likewise filed objections on December 11, 2014. Among the government's objections relevant to this appeal was their argument that additional drug quantities should be added to the amounts originally attributable to Mr. Gastelo due to additional information obtained from co-defendants, thereby resulting in a total offense level of 39 as opposed to 35. JA 258-265. On December 18, 2014, a revised PSR

was filed that incorporated the government's position. JA 266-283. This became a matter of contention which has led to the central issues raised on this appeal.

Mr. Gastelo appeared for sentencing before the Hon. Frank D. Whitney, U.S. District Court Judge Presiding, on March 2, 2015. After a period of discussion with respect to whether or not the defendant would move to withdraw entry of his plea, which is discussed *infra*, the court heard testimony from DEA Agent Dustin Harmon and alleged co-conspirators Lorenzo Gonzalez, Steven Gonazlez, and Carlos Moreno. JA 32-169. The court found the amount of heroin attributable to the defendant to be at least 12.2 kg, which resulted in a total offense level of 38 as opposed to 35 from the initial PSR, with a criminal history category of II. JA 189-190. Although the guideline range called for a sentence of 262-326 months, the court granted a moderate variance and sentenced the defendant to a prison term of 240 months. Upon release from custody it was further ordered that he be on supervised release for a period of five years. Counts two and four of the defendant's indictment were dismissed. JA 205-207, 213-218.

The court advised that Mr. Gastelo had preserved his right to appeal based on potential grounds of ineffective assistance of counsel and prosecutorial misconduct. JA 208. Notice of

appeal to this Court was then filed both *pro se* and by counsel on March 13, 2015. JA 219-221.

Statement of Facts

The following was taken from the defendant's final pre-sentence investigation report, in addition to pertinent portions of testimony from his sentencing hearing.

In December of 2012, the Charlotte office of the DEA began an investigation into a local area heroin distribution network. On January 28, 2013, Agent Dustin Harmon (incorrectly noted as "Hannon" in the PSR), in undercover capacity, met with the defendant at a local bar. The defendant allegedly told Agt. Harmon that he could get whatever amount of heroin that was wanted, but that he had to contact his boss in Mexico to inform him to prepare for large orders. Phone conversations between the defendant and Agt. Harmon were subsequently held on January 30 and February 4. JA 270-271.

On February 21, 2013, a trash pull was conducted at 1209 Clear Springs Court in Charlotte, a residence that was a suspected stash location. Several bags containing miscellaneous documents that purportedly linked the defendant to other individuals and a drug trafficking enterprise based in Mexico were retrieved. On March 29, officers received information that an unknown female may be transporting a load of heroin from Los Angeles to Charlotte. They later learned that the courier had

4

taken heroin to the 1209 Clear Springs Court stash house. JA 271.

On April 12, agents again learned of the female courier traveling to Charlotte, with the heroin to be secreted in a suitcase. Surveillance was conducted at the Comfort Suites motel on Mulberry Church Road. Two Hispanic males, Marcelino Rivera Vorquez and Benjamin Villanueva Estrada, arrived at the hotel and met with the courier. They exchanged $10,000 for the suitcase, then left the hotel only to be stopped by police officer Chris Newman for reckless driving. Officer Newman located several balloons inside the center console of their vehicle, then opened the suitcase which was inside the trunk. The suitcase had a false bottom with 2.512 kilograms of heroin glued to the underside. JA 271-272.

Investigators later received information regarding another possible delivery to Charlotte involving the same female target. On April 27, a controlled delivery was conducted at the same motel. A phone conversation led to an agreement that a Hispanic male would arrive to pick up the heroin. The defendant, together with Carolos Lopez-Hernandez, subsequently arrived and gave the courier $10,000 in exchange for the suitcase which contained 2.464 kilograms of heroin. They were arrested and the defendant agreed to be interviewed. JA 272.

The defendant stated that the shipment was from an individual known as Manny, and that he was paid $1,000 to $1,200 weekly by Manny, who lives in Sinaloa, Mexico, which was his wage for heroin distribution. He had received a suitcase from Manny on a prior occasion, and sends money to Manny using money remitter services. He received five ounces of heroin every week for the last six months.  JA 273.

According to testimony from Agt. Harmon, the defendant sold 6 grams of heroin to a confidential informant on January 11, 2013, which led to his meeting on January 28 with the defendant while in undercover capacity. He corroborated the PSR factual basis with respect to the surveillance of 1209 Clear Springs Drive and the trash pull. Agt. Harmon further noted that he had arrested the courier, Ms. Perez, at the airport on April 27, and she agreed to the subsequent controlled delivery at Comfort Suites Motel. JA 57-78.

Agt. Harmon further testified that during the post-arrest interview, the defendant stated that he had received another shipment earlier the same day in a suitcase very similar to the one carried by Ms. Perez, which was later found empty in his residence. In addition to the five ounces of heroin per week that was sent from Mexico, the defendant also admitted to selling an ounce per day to Jason Loggins over the last six months.  JA 80-89.  When arrested, the defendant had 2.464

6

kilograms in his possession, 3.4 grams were located at 9408 Tiger Lilly Lane, but no drugs were found in the additional empty suitcase. JA 109-122.

Co-defendants Lorenzo Gonzalez and Steven Gonzalez (both of whom had previously entered guilty pleas in federal court), together with Carlos Moreno (who had entered a guilty plea to heroin charges in state court), followed Agt. Harmon to the stand and testified over objection, as their proffered information was not part of the original PSR that was filed November 24, 2014. Lorenzo stated that the defendant had brought him to Charlotte specifically to sell heroin, and that they lived together at the Clear Springs address.  Lorenzo would sell it for approximately $1000 per 14 grams, and testified that he once saw a softball sized quantity of heroin on the table at the Clear Springs home. JA 128-140.

Steven Gonzalez, the brother of Lorenzo, also lived at the Clear Springs residence, and sold approximately 20 grams of heroin per day for about six months.  He had told Agt. Harmon when interviewed on September 7, 2014, that he was selling 2 to 3 ounces per day. JA 144-155. Carlos Moreno, a cooperating witness who hoped to substantially assist the government, further claimed that he would sell 25 one-gram packages of heroin per day. Moreno had told Agt. Harmon when interviewed on May 9, 2014, that he sold 15 grams per day, and that together

with Steven Gonzalez their combined total was 15 to 25 grams per day. JA 157-165.

## SUMMARY OF THE ARGUMENT

The defendant submits that his plea of guilty and sentence should be overturned and his case remanded to district court, since his plea was not knowingly and voluntarily entered. As he agreed to forfeit appellate rights with the exception of potential ineffective assistance of trial counsel and/or prosecutorial misconduct, he is thereby structuring his claims for relief within the context of those issues.

Mr. Gastelo contends that his decision to enter a plea was based on information that was known to and relayed by trial counsel at the time of entry, and had trial counsel obtained and informed him of complete relevant discovery, then he may not have agreed to the proposed negotiation. To the extent that trial counsel did not fully advise the defendant of potential consequences relating to his plea of guilty, he contends that ineffective assistance may apply.

In addition, the defendant submits that the remarks made by the prosecutor when he was contemplating a move to withdraw entry of his plea may constitute prosecutorial misconduct, as such resulted in improper pressure on influencing his decision to move forward with his sentencing hearing.

ARGUMENT

ARGUMENT I: Whether the defendant's plea was unknowing and involuntary due to ineffective assistance of trial counsel?

A.   Standard of Review

The issue of whether a guilty plea was knowingly and voluntarily entered is generally reviewed *de novo*, *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995). However, if trial counsel failed to challenge the indictment at issue, as in the matter at bar, the standard of *plain error* is invoked. The appellant must establish that error occurred, that it was plain, and that it affected his substantial rights. The reviewing Court is charged to correct errors that seriously impact the fairness, integrity, or public reputation of the proceedings. *See United States v. Dinnall*, 269 F.3d 418 (4th Cir. 2001), *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998).

*Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984), established the standard for ineffective assistance of trial counsel, in that: (1) attorney performance must have been objectively unreasonable; and (2) the defendant was prejudiced by such, i.e. a reasonable probability exists that but for the error a different outcome would result from the challenged proceeding. Counsel recognizes that such claims are generally not cognizable on direct appeal unless they conclusively appear from the record (*United States v. Richardson*, 195 F.3d 192 (4th

Cir. 1999), but maintains that the drug amount controversy and conduct attributable to the same are readily apparent from the transcript in the matter at bar.

B.    Substance of the Argument

In *Strickland*, *supra*, 466 U.S. at 691, our U.S. Supreme Court clearly stated that effective assistance of counsel includes the duty to make reasonable investigations, or to make a reasonable decision that makes particular investigations unnecessary. Without complete investigation, proper counsel with regard to whether or not to enter a guilty plea cannot be said to have occurred. A guilty plea must be counseled in the sense that a defendant has a right to effective assistance of counsel in making his decision to plead guilty. *Florida v. Nixon*, 543 U.S. 175, 187, 160 L. Ed. 2d 565 (2004).

In the matter at bar, it is undisputed that the defendant's offense level increased due to drug quantity changes from his initial PSR to his final PSR. This increase was due to information which trial counsel admits was provided through discovery in cases that he was not counsel on (JA 95-96), but which he was unaware of at the time that he negotiated the defendant's plea agreement with the government. The district court noted on the record that trial counsel had an opportunity, however, to negotiate a drug amount at the time of the plea agreement, but failed to do so. JA 103, 108. Furthermore, trial

counsel admitted on the record that he was not able to give the defendant proper counsel at the time the plea negotiation was accepted. JA 192.

The 6th Amendment requires effective assistance of counsel not only at trial, but at all critical stages of the proceeding, including pretrial. *Halbert v. Michigan*, 545 U.S. 605 (2005). When a defendant demonstrates that ineffective assistance has caused the rejection of a plea that inevitably resulted in a more severe sentence at trial, the remedy must "neutralize the taint" of the constitutional violation. *Kimmelman v. Morrison*, 477 U.S. 365 (1986). Here we have the exact reverse situation, in that improper counsel may have contributed to acceptance of the plea as opposed to rejection.

Our U.S. Supreme Court recently addressed the former set of circumstances in *Lafler v. Cooper*, 566 U.S. 1, 182 L. Ed. 2d 398 (2012), wherein ineffective advice was deemed to have led to the defendant's rejection of a plea and the resulting prejudice was his having to stand trial. In *Lafler*, the defendant and 3 others were charged in Michigan with intent to commit murder. The district attorney offered a sentence of 51 to 85 months, but the defendant's attorney convinced him to reject the offer, claiming that the prosecution could not establish intent due to the victim having been shot below the waist. After trial, the convicted defendant received 185 to 360 months. Justice Kennedy,

writing for the Court, *ordered* the state to reoffer the plea as *Strickland*, *Id.*, was satisfied due to the attorney's deficient advice, but for which there was a reasonable probability that the defendant would have accepted the plea and be sentenced to a significantly less term of confinement.

The defendant submits that this same logic should extend to circumstances where but for deficient advice, his plea would not have been entered. Undersigned counsel will acknowledge that the defendant may well have entered a guilty plea even if fully apprised of the information that came to light after his initial PSR, but that does not detract from his argument that at the time of agreement, he was not fully apprised of the potential consequences. To the extent that this was the result of trial counsel's failure to fully investigate facts pertinent to drug amounts attributable to Mr. Gastelo, the plea would be a by-product of ineffective assistance. Somewhat analogous is the case of *Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), where this Court held that failure of trial counsel to investigate an insanity defense was not objectively reasonable.

In *United States v. Moussaoui*, 591 F.3d 263 (4th Cir. 2010), this Court held that under Rule 16 of the Federal Rules of Criminal Procedure, the government must produce, among other things, items material to preparing the defense. This includes disclosure of evidence that is material to either guilt or

punishment, as in drug amounts that would be reasonably foreseeable to the defendant in question. *See Brady v. United States*, 397 U.S. 742, 25 L. Ed. 2d 747 (1970). Trial counsel does not dispute that the government complied with its obligation in the matter at bar, but he did not follow up on information provided in discovery that would have impacted the proper determination of drug amounts attributable to the defendant.

For example, the government noted that, although the co-defendants at issue were not arrested until after Mr. Gastelo's plea, their names were included within discovery provided to trial counsel. In the report of TFO Miller, the names Lorenzo Gonzalez, Carlos Moreno, and Ricky (Steven Gonzalez) were all mentioned in relation to the trash pull at 1209 Clear Springs Court. In addition, Ricky accompanied Mr. Gastelo to his meeting with Agent Harmon. JA 88, 89. A summary of the information relating to each these individuals was subsequently provided to trial counsel prior to sentencing (JA 51), but trial counsel contended that he was not aware of their impact until after entry of Mr. Gastelo's plea. Accordingly, how can it be said that the plea was a product of informed choice?

If a defendant has not been properly informed as to the elements of the offense for which he is charged, together with the facts that support those elements, it cannot be said his

13

entry of plea was valid. *See Bradshaw v. Stumpf*, 545 U.S. 172, 162 L. Ed. 2d 143 (2005). Although it is impossible for either undersigned counsel or this Court to determine from the record what was said to the defendant during attorney/client privileged discussions, it is apparent that the facts which supported Mr. Gastelo's ultimate offense level were not relayed to him by anyone at the time his plea was entered.

As Justice Douglas wrote in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274 (1969), "what is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences." The fact pattern of the case at bar falls short of this fundamental precept, and the defendant submits that such was the product of trial counsel's objectively unreasonable performance as to the investigation of his case, which led to improper advisement as to the consequences of entering his plea of guilty. Such results in prejudice, affecting his substantial rights to trial by jury and freedom from unlawful confinement, and thus constitutes *plain error*. If Mr. Castelo had been fully advised of the potential ramifications of entering his plea, there is a reasonable probability that he might not have done so.

ARGUMENT II: Whether prosecutorial misconduct served to influence the defendant's decision to forgo moving to withdraw his guilty plea?

A.    Standard of Review

The test for reversible prosecutorial misconduct has two components: (1) the remarks made by the prosecutor or the conduct exhibited by the prosecutor must have been improper; and (2) such remarks or conduct must have prejudiced the defendant's substantial rights. *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988). Since this claim was not alleged as error at trial, the standard for review is likewise that of *plain error. United States v. Alerre*, 430 F.3d 681 (4th Cir. 2005).

B.    Substance of the Argument

The defendant submits that remarks made by the prosecutor further support his claim that his plea was not entered in a knowing and voluntary manner. At the onset of his sentencing hearing, there was a lengthy and significant discussion on the record concerning the prospect of Mr. Gastelo moving to withdraw his guilty plea. This potential decision occurred after he became apprised of the aforementioned additional information deemed relevant to drug amount. While this decision was being made, the prosecutor injected that if the defendant were to unsuccessfully move to withdraw his plea, the government would move to withdraw his three-point reduction for acceptance of responsibility and also proceed on his money laundering count

15

which they had planned to dismiss. These actions, if accepted by the trial court, would result in a five-level detrimental difference for Mr. Gastelo. JA 41.

This Court has stated that withdrawal of a guilty plea must be allowed for any fair and just reason. A fair and just reason has been held to be one that essentially challenges the fairness of the plea proceeding. *United States v. Puckett*, 61 F.3d 1092 (4th Cir. 1995). At bar we have some obvious degree of confusion and misunderstanding of consequences on the part of the defendant, largely due to the circumstances addressed in his former argument. In addition to that, however, it can be argued that the prosecutor's remarks tainted his decision by applying undue influence in the form of a sentencing threat. Although counsel has not been able to locate precedent that is squarely analogous from a factual standpoint, he submits that had those comments not occurred, the defendant may well have decided to go forward with his withdrawal motion.

A defendant's right to trial by jury is fundamental to our system of justice, enshrined not only in our U.S. Constitution, but in the Constitution of every state in the union. This fundamental right can be traced to the English Magna Carta and 1689 Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 20 L. Ed. 2d 491 (1968). It is hard to fathom that our founding fathers would approve of a defendant being pressed to forgo that

16

fundamental right by threat of a more severe sentence. A sentencing proceeding is not a card game, but an important component of due process that should not be tainted by any player who has a role in seeing that justice is properly administered.

As noted in *Brady v. United States*, *Id.*, a guilty plea is a grave and solemn act to be accepted only with care and discernment. In order for it to be valid, it must be the voluntary expression of the defendant's own choice. The totality of circumstances in the matter at bar clearly question the constitutional validity of the defendant's plea. For it to be the product of informed choice, he must be apprised of all the relevant facts, and his decision should be free from any form of a perceived coercive influence.

The remarks made by the prosecutor, akin to issues raised in the defendant's prior argument, cast an additional shadow on the fairness and integrity of the proceeding at issue. The defendant's substantial rights, particularly his right to trial by jury, were affected by these comments, and he therefore submits that *plain error* should apply and require his conviction and sentence be stricken.

## CONCLUSION

Given that the defendant's plea was not a product of his informed choice, largely due to ineffective assistance of trial

17

counsel and prosecutorial misconduct, he respectfully requests that this Court reverse his conviction and sentence and remand his case to U.S. District Court for further proceedings.

REQUEST FOR ORAL ARGUMENT

The defendant respectfully requests that oral argument in the matter at bar be granted, so as to allow him to fully present his case and protect his constitutional rights to complete and effective representation.

This the 31st day of July, 2015.

/s/ William D. Auman
William D. Auman
Auman Law Offices
70 Woodfin Place, Suite 403
Asheville, NC  28801
828-236-1808
N.C. Bar # 13400
wdauman@gmail.com
Attorney for Appellant

CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed.
    R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [      ] this brief contains [*state the number of*] words,
    excluding the parts of the brief exempted by Fed. R. App.
    P. 32(a)(7)(B)(iii), *or*

    [  X  ] this brief uses a monospaced typeface and contains
    [*428*] lines of text, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed.
    R. App. P. 32(a)(5) and the type style requirements of Fed.
    R. App. P. 32(a)(6) because:

    [      ] this brief has been prepared in a proportionally
    spaced typeface using [*state name and version of word
    processing program*] in [*state size and name of font*]; *or*

    [  X  ] this brief has been prepared in a monospaced
    typeface using [*Microsoft Word 2007*] with [*10 inch per
    character Courier New Font*].


Dated: July 31, 2015                /s/ William D. Auman
                                    *Counsel for Appellant*

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 31st day of July, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
100 Otis Street, Room 233
Asheville , North Carolina  28801
(828) 271-4661

*Counsel for Appellee*

I further certify that on this 31st day of July, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel or Appellee.

/s/ William D. Auman
*Counsel for Appellant*